## STATE OF MARYDAND, Use of CHARLES L. GEMUNDT *vs.* CHARLES SHIPLEY.

*Suit Against Party in County Where He Does Not Reside—Carrying on Regular Business—Plea in Abatement to the Jurisdiction—Waiver.*

Code, Art. 75, sec. 132, provides that a person who resides in one county but carries on any regular business, or habitually engages in any avocation or employment in another county may be sued in either county. *Held,* that the regular business or habitual employment contemplated by this provision is a fixed occupation connected with some of the branches of trade, industry or commerce, or the continuous pursuit of some calling or profession. It does not consist of the mere transaction of one's private affairs. Nor does the making of a single transaction with another person in the line of a particular business constitute a carrying on of that business.

Defendant had formerly carried on the real estate business in Baltimore City, but gave up his license about five years before this suit was brought and maintained his residence in Frederick County, where he

had long resided. He continued to come to the city occasionally and to use there the room, also occupied by his son, where his office had previously been, and upon the door of which his name remained followed by the words: "Collecting and conveyancing." Since removing from the city defendant had transacted no business there except the collection of his own rents and the management of his private affairs and also the collection of one ground rent owned by him and another person as tenants in common, to whom he paid the share so collected. An action of tort was brought against the defendant in the city and he filed a plea to the jurisdiction. *Held*, that the defendant did not carry on any regular business or habitually engage in any employment in Baltimore City and that consequently he was not liable to suit in that city.

The right of a defendant to object to the jurisdiction of a Court over him is waived by his appearance in the case by counsel and a failure to make promptly the objection, or a participation by him in some step looking for a defense of the case on its merits.

Defendant was summoned in this action in Baltimore City, appeared *in propria persona* and filed a plea to the jurisdiction setting forth that he was not a resident of the city and did not carry on any regular business therein. After issue joined on plaintiff's replication to the plea, counsel filed an order entering his general appearance for the defendant. *Held*, that this appearance by attorney, who merely insisted upon the plea to the jurisdiction, was not a waiver of that plea.

Appeal from Baltimore City Court (DENNIS, J.)

The cause was argued before MCSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*John C. Tolson* (with whom was *Olin Bryan* on the brief), for the appellant.

*Thomas G. Hayes* and *R. Lee Slingluff*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

An infant son of the equitable appellant was killed in March, 1902, by the caving in of a sand bank located on land, owned by the appellee, lying in Baltimore City. This suit was instituted to the use of the appellant in the Baltimore City Court to recover damages for the loss which he sustained by the death of his son. The appellee was sought to be held liable for the injury because of his alleged negligence in allow-

ing the sand bank to be in a dangerous condition on an open lot which he permitted the children of the neighborhood to use as a playground.

The appellee having been summoned appeared to the action *in propria persona* and filed a plea to the jurisdiction averring that he was not a resident of Baltimore City and neither carried on any regular business nor was habitually engaged in any avocation or employment in that city, but that he resided in Frederick County. This plea was verified by a proper affidavit. The plaintiff replied traversing the plea and issue was joined on the replication.

After the issue had been thus made up, but before it had come to a hearing in the Court below, the appellee appeared to the case by counsel who filed an order of appearance in the following form : "Enter my appearance for the defendant, Charles Shipley, in the above case." The parties to the case then agreed to try the issue made up on the plea to the jurisdiction before the Court without the intervention of a jury and they went to trial before the Court upon that issue alone.

The uncontradicted evidence of the defendant at the trial of the issue of jurisdiction was that he had formerly carried on the real estate and collecting business in Baltimore City but he had given up his license as a real estate broker five or six years ago and that he had moved his residence to Frederick County near Thurmont in 1891. That he had not carried on any business or been engaged in any habitual avocation or undertaking of any kind in Baltimore City for the last four or five years. That he owned considerable real estate in Baltimore City and that he collected his own rents and ground-rents but he had done no other business in that city for four or five years than to attend to his own private affairs, with the one exception of collecting the entire rent from a ground rent owned by him and another person as tenants in common. In that case he collected the entire rent and paid his co-tenant one-half of it less a commission for its collection. While he was engaged in the real estate brokerage and collecting business in Baltimore he used a room in one of his own houses,

No. 217 Courtland street, as an office and he had a sign over the outside door of the house and also one over the door of the room used as his office. These signs read "*Charles Shipley, Collecting and Conveyancing.*" He still uses that room for conducting his private business and has his son there who assists him incollecting his rents. He had forgotten all about these signs and had not noticed them for years until his attorney, since the institution of this suit, called his attention to the fact that they were still up. He generally visits the office when he comes to town to see what is doing. The bills which he sends out to his tenants for his rents are made out on printed bill heads bearing his name and his address at No. 217 Courtland st. He further testified that he was not a registered voter and was not registered either in Baltimore City or in Frederick County.

Upon this uncontradicted state of facts the Court below ruled as a matter of law that the defendant was not to be regarded as residing or carrying on any regular business or habitually engaged in any avocation or employment in the city of Baltimore and directed a verdict to be entered in his favor. The plaintiff excepted to the Court's ruling on the law and the verdict and judgment having been entered against him he took the present appeal.

The learned Judge of the City Court was correct in his ruling upon the law of the case. The appellee had resided in Frederick County for more than ten years prior to the institution of the suit and for the latter half of that time he had not been engaged in any kind of business or employment in Baltimore City other than attending to his own private affairs. The collection by him of his co-tenant's share of one ground rent did not constitute the carrying on of a business. Nor did the fact that he continued to transact his private affairs, with the assistance of his son, from the same room in his own house on Courtland street in which he had formerly carried on the real estate and collecting business.

The circumstances that when he retired from business he failed to take down the signs which had been used in connection with the business is not material to this case. That fact

along with others of a similar nature might tend to prove that he had held himself out to the public as still engaged in the business and might confer rights upon one who had acted to his own prejudice in reliance upon such representations, but no Issue of that character could arise in the present suit for damages even if it were before us upon its merits.

The regular business or habitual avocation or employment contemplated by sec. 132 of Art. 75 of the Code, which renders the person engaged therein liable to be sued in the county in which it is carried on, is a fixed occupation connected with some of the branches of trade, industry or commerce, or the continuous pursuit of some calling or profession, such as is ordinarily engaged in as a means of livelihood or for the purpose of gain or profit. It does not consist of the mere transaction of one's own private affairs. Nor does the making of a single transaction with another person in the line of a particular business constitute a carrying on of that business.

The expression "carry on business" was thus construed when used in sec. 60 of the *Statute 9 and 10 Victoria*, ch. 95, where it was employed, as it is in the section above referred to of our Code, to define the jurisdiction in which a defendant might be sued. *Shiels* v. *Gt. Northern Railway Co.*, 30 L. J. Q. B. 331. In *Smith* v. *Anderson*, L. R., 15 Chy. Div. 258, JESSEL, M. R., after citing definitions of business from different exicons said: "Anything which occupies the time and attention and labor of a man for the purpose of profit is business."

The distinction between the single or occasional performance of isolated acts pertaining to a particular business and the regular or habitual carrying on of that business has frequently been pointed out by the Courts. The United States Supreme Court in construing the expression "whose business it is" as applied to brokers in the U. S. Revenue Laws said: "All parts of the definition are qualified by the words 'whose business it is.' Thus, if A B has $10,000 which he desires to invest, and purchases United States stock, or State stock, or any other securities, he does not thereby become a broker. Nor if he owns $10,000 of U. S. stock which he wishes to

sell to raise money to pay his debts, or because he is not satisfied with six per cent interest, is he thereby made a broker. It is only when making sales and purchases in his business, his *trade*, his *profession*, his *means of getting his living, or of making his fortune* that he becomes a broker within the meaning of this statute.    Nor is it believed that sale by one doing a brokerage business only, of a security received by him for the repayment of a legitimate loan, would make him a broker and subject to the tax.    This would not be deemed an act of brokerage either under the statute or upon general principles of law." *Warren* v. *Shook*, 91 U. S. 704, 710.    See to same effect *Cooper. Mfg. Co.* v. *Ferguson*, 113 U. S. 727; *Holmes* v. *Holmes*, 40 Conn. 117; *Kilgore* v. *Smith*, 122 Pa. 48; *Bates* v. *Bank*, 2 Ala. 451; *State* v. *Ray*, 14 L. R. A., and authorities cited in note to that case.

The appellant strongly contends that the appearance of the appellee's attorney, not having been special in its terms, was a general one and amounted to a waiver of any objection to the jurisdiction.    Many authorities undoubtedly hold that the general appearance of a defendant by counsel to any case, in which the Court has jurisdiction over the subject-matter of the suit, operates as a waiver of any objection to the jurisdiction over him personally.    This doctrine is generally based upon the ancient and somewhat technical proposition that an appearance by attorney is presumed to be made by leave of Court and therefor involves an admission of the Court's jurisdiction.

Other authorities maintain the more modern and rational proposition that the right of the defendant to object to the Courts jurisdiction over him is waived by his appearance to the case by counsel and a failure to promptly make the objection, or a participation by him in some step looking to a defense of the case on its merits.    This last-mentioned doctrine has been repeatedly announced or recognized as the correct one both by the United States Supreme Court and by this Court.    In *The Interior Construction Co.* v. *Gibney*, 160 U. S. 219–20.    The Supreme Court say "The provision as to the particular district in which the action shall be brough

does not touch the general jurisdiction of the Court over such a cause between such parties, but affects only the proceedings taken to bring the defendant within such jurisdiction, and is a matter of personal privilege which the defendant may insist upon or may waive at his election; and the defendant's right to object that an action within the general jurisdiction of the Court is brought in the wrong district is waived by entering a general appearance *without taking the objection.*" In the *Southern Pac. Co.* v. *Denton,* 146 U. S. 202, the same Court say "It may be assumed that the exemption from being sued in any other district might be waived by the corporation, by appearing generally or answering to the merits of the action, *without first objecting to the jurisdiction.*" See also to same effect *Cent. Trust Co.* v. *McGeorge,* 115 U. S. 130; *St. Louis, &c., R. R. Co.* v. *McBride,* 141 U. S. 127.

In several cases where a defendant, who was sued out of the county of his residence, appeared by counsel and filed a plea to the jurisdiction setting up his non-residence this Court held the question of jurisdiction to have been properly raised. In *Yoe* v. *Gelston,* 37 Md. 234, the record shows that the defendant, who resided in another county from the one in which he was sued, entered a general appearance by his attorney and then, after more than two months beyond the expiration of the rule to plead which had been laid upon him, he made a motion of *non pros* on the ground of non-residence. This Court held that the motion had been made too late as it was to be regarded in the same light as a dilatory plea which must be filed within the limits prescribed by the rule; but it was held in that case that "The appellee was entitled to claim the benefit of his statutory exemption (of not being sued out of the county of his residence until, &c., &c.), and according to the practice in this State he was at liberty to avail himself of his privilege either by plea or by a motion addressed to the Court. *Hamilton* v. *State,* 32 Md. 348; *Gittings* v. *State,* 33 Md. 458, and 35 Md. 169. It is also settled by those cases that a party may make these defenses either in person or by attorney, the appearance of an attorney for that purpose not being a waiver of the exemption. *Gittings* v. *State,* 35 Md. 173."

In *Hoffman* v. *Prout*, 4 H. & McH. 165, the defendant having been taken on *capias* in a different county from that in which he resided his counsel moved that, he might be discharged from arrest which was done by the Court with costs. In *Gittings* v. *The State*, 35 Md. 173, the Court, speaking through ALVEY, C. J., refer to Prout's case and say, "In that case moreover, it would seem the appearance of defendant by counsel was not regarded as a waiver of the exemption and as a submission to the jurisdiction of the Court as has been contended in this case." In *Fairfax* v. *Chambers*, 75 Md. 614–15, the Court say, "Although the defendant was not amenable to process under sec. 296, Art. 23 of the Code, yet having voluntarily appeared and the case having been tried on its merits the Court thereby acquired jurisdiction."

Under the authority of the foregoing cases it is clear that the appellee, having appeared to the present action *in propria persona* and pleaded to the jurisdiction, is not to be held to have waived his objection to that jurisdiction by the fact that his counsel subsequently entered a general appearance for him and took no action looking to a defense on the merits but merely upheld and insisted upon the plea already filed by his client.

The appellee made a motion to dismiss the appeal but as we have fully considered the case upon its merits and have concluded that the judgment must be affirmed we deem it unnecessary to further notice that motion.

*Judgment affirmed with costs.*

(Decided February 19th, 1904.)