CAPRON *v.* MANDEL, ET AL.

[No. 47 (Adv.), September Term, 1968.]

</div>

256

*Decided per curiam April 30, 1968.*

*Opinion filed May 31, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY,[*] MARBURY, BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*John Silard,* with whom was *Louise A. Terzian* on the brief, for appellant.

*Alfred L. Scanlan,* with whom was *Thomas Hunter Lowe* on the brief, for the appellees.

FINAN, J., delivered the opinion of the Court.

The appellant filed suit for "Declaratory and Equity Relief" in the court below, as a resident and registered voter of the Democratic Party in Montgomery County, Maryland, the named defendant (appellee) being "Marvin Mandel, Chairman of the Democratic State Central Committee for Maryland, and the Democratic State Convention." Mandel filed a motion to dismiss the bill for improper venue and want of an indispensable party, in that the complaint failed to name the "Democratic State Central Committee for Maryland" as a party defendant. The court overruled these objections from the bench and after an answer was filed by Mandel, proceeded to hear the case on its merits. At the conclusion of the hearing on the merits, the appellant was permitted, over the timely objections of the appellee, to amend her complaint to include the "Democratic State Central Committee for Maryland," as a defendant. The lower court in its opinion stated that, "The defendants before the court are Marvin Mandel, Chairman of the Demo-

cratic State Central Committee for Maryland and the Democratic State Central Committee for Maryland."

The purpose and object of the complaint was to enjoin the Democratic Party of Maryland from holding a scheduled state convention to select and certify delegates to the Democratic National Convention to be held in Chicago, Illinois, some time in August of this year. The gravamen of the complaint is that at the time of the election by the registered voters of the Democratic Party of their State Central Committee in 1966, the Central Committee did not possess the power to effect the election of a nominee for President of the United States, by a State or National Convention through nomination of delegates, and that any such power is derived exclusively from Chapter 392 of the Acts of Maryland 1967, which empowers the previously elected members of the State Central Committee to constitute a State Convention of the Democratic Party. The appellant contends that since the Presidential Primary Law enacted in this State in 1912 was repealed by Chapter 784 Section (b) of the Acts of Maryland 1965, the present method of holding a state political party convention for the purpose of electing delegates to a national convention as set forth in Chapter 392 deprives her of her right to participate, directly or indirectly, in an informed selection of delegates to the National Convention of the Democratic Party. The main thrust of her challenge is that the procedure provided by Chapter 392 deprives her of the "due process" and "equal protection" guaranteed her by the Fourteenth Amendment to the United States Constitution, in that it violates the "one person one vote" rule pronounced by the United States Supreme Court in *Gray v. Sanders,* 372 U. S. 368 (1963). A more detailed recitation of the facts and contentions set forth by the appellant in her complaint and argument is unnecessary, for the reason that this opinion in deciding the liminal jurisdictional issues pertaining to venue and necessary party becomes dispositive of this appeal.

The record does not reveal any comment on the part of the lower court explaining its refusal to grant the appellee's motion to dismiss the complaint for improper venue and want of a necessary part. The court's opinion dealing with the case on its merits is devoted to an erudite historical review of the man-

ner in which political parties in this State over the years have selected delegates to national party conventions.

We are satisfied that the parties to this suit, their counsel who ably argued this case, as well as the lower court, would be gratified if this Court were to come to grips with the intriguing constitutional questions presented by this appeal; however, to do so would manifest a callous indifference to the jurisdictional flaws revealed by the pleadings. It is appropriate to recall the quotation from Justice Holmes, aptly referred to by counsel for the appellees: "Law is secreted in the interstices of procedure."

Although the appellee Mandel did not file any cross appeal to the lower court's refusal to grant his motion to dismiss the bill because of improper venue and want of a necessary party, we do not think a cross appeal was necessary to raise on appeal the correctness of the lower court's ruling on the preliminary motion. In *Kikas v. Baltimore County,* 200 Md. 360, 89 A. 2d 625 (1952), the court, although dealing with a demurrer rather than a motion challenging venue and jurisdiction, stated:

> "The defendants could not have appealed immediately from the order overruling the demurrer, but that ruling is made reviewable on appeal from the final decree (Rules Respecting Appeals, 6A). The defendants did not appeal from the final decree because it was in their favor, but if the complainants did not state a proper case in their bill of complaint, and the demurrer should have been sustained, then the case proceeded erroneously to a final decree, no matter in whose favor it was rendered. The correctness of the ruling on the demurrer, therefore, is immediately before us on this appeal." *Id.* at 363, 89 A. 2d at 626.

## VENUE

First, considering venue, the record reveals that the defendant Marvin Mandel, Chairman of the Democratic State Central Committee, did not at the time of this action reside in Montgomery County, nor did he maintain an office there, or

regularly conduct business there. Code 1957, Art. 75, § 75 (a) (Cum. Supp. 1967) provides:

"(a) No person shall be sued out of the county in which he resides until the sheriff or coroner of the county in which he resides shall have returned a non est on a summons issued in such county: * * * and provided further, that any person who resides in one county, but carries on any regular business, or habitually engages in any vocation or employment in another county, may be sued in either county* * *."

The conclusion is obvious that it was improper to bring Mr. Mandel into Montgomery County for the purpose of suing him as Chairman, Democratic State Central Committee. The privilege of a defendant to be sued only in the county of his residence is a substantial right not to be denied except in strict compliance with the exceptions established by law.

The office of Chairman of the Democratic State Central Committee is not a public office, but rather a party office, a distinction emphasized in 47 *Op. Att'y Gen.* 69, 71 (1962); 43 *Op. Att'y Gen.* 162 (1958); and 19 *Op. Att'y Gen.* 251 (1934).

However, even if Mr. Mandel were to be considered a public official the result would be the same. See *Eck v. State Tax Commission,* 204 Md. 245, 103 A. 2d 850 (1954). In that case an appeal was taken from the action of the Montgomery County Circuit Court dismissing a petition for a writ of mandamus filed against the State Tax Commission of Maryland, in Montgomery County, for improper venue. Henderson, J., speaking for the Court in an affirming opinion, stated:

"They contend that at common law a public officer could be sued in a transitory action wherever found and the rule has not been changed by Section 158, Article 75 of the 1951 Code [now Article 75 Section 75 (a)], which they say is inapplicable to public officers." *Id.* at 248; 103 A. 2d at 852.

* * *

"[W]e think the matter is covered by our general

venue statute and that public officers are within its scope." *Id.* at 253; 103 A. 2d at 855.

The rule requiring an individual, a quasi public official, or a public official, to be sued in the county wherein he resides, or wherein he or the office he may represent carries on its business, is grounded on a rule of convenience. Each of the 23 counties of this State and Baltimore City maintain Circuit Courts and to hold that Mr. Mandel, as State Chairman of the Democratic State Central Committee, residing in Baltimore, could legally be compelled to defend 24 lawsuits, conceivably simultaneously pending, would expose him to an unconscionable burden.

There is nothing in the record to show that Mr. Mandel as Chairman of the Democratic State Central Committee "carries on regular business" in Montgomery County, Maryland, save for the notices he dispatched from Baltimore to the members of the Democratic State Central Committee residing in Montgomery County informing them of the proposed State Convention to be held in Baltimore on March 29, 1968. There is no evidence that he maintained in Montgomery County any office, telephone listing or bank accounts, as Chairman of the Democratic State Central Committee. We do not think that his activity of sending out notices to members of the Committee in Montgomery County or the telephone calls that he made to them from his office or home in Baltimore City or his attendance at occasional meetings in Montgomery County, constituted the carrying on of regular business or habitual engagement in any vocation, as required by Article 75, § 75 (a).

In *National Bank of Baltimore v. Steele,* 143 Md. 484, 122 A. 633 (1923), the appellee, who was a practicing attorney residing and maintaining a professional office in Carroll County, was sued in Baltimore City as an endorser on a note which was in default. Appellee also worked two days a week in Baltimore as a Surveyor of Customs for the United States Government. A specific office was assigned to him in the Customs House in Baltimore, and his mail for the most part was addressed to him there. This Court, in affirming the lower court's holding of improper venue, stated:

"By the uncontradicted evidence in the case, the ap-

pellee was, at the time of the institution of this suit, a resident of Carroll County, where he had for many years practiced his profession from which he had acquired a livelihood, and he at such time had no business, avocation or employment in the City of Baltimore, unless the performance of his official duties as Surveyor of Customs can be so regarded.

"That it was not a regular business is shown from the fact that it was not 'a fixed occupation connected with some of the branches of trade, industry or commerce,' and it would seem that the appellant shared in this view, for in his prayer he does not ask the court to hold, if it found the facts mentioned in it to exist, that the appellee was carrying on a 'regular business,' but the court is simply asked to hold upon such finding that he was engaged in an avocation or employment within the statute.

"In our opinion the court was right in refusing this prayer, for the facts mentioned do not, we think, warrant the conclusion that the appellee at the time was 'habitually engaged in some avocation or employment' in the City of Baltimore, for it cannot be said that he, while performing his official duties, was 'in pursuit of some calling or profession such as is ordinarily engaged in as a means of livelihood for the purpose of gain or profit.' " *Id*. at 487, 122 A. at 624.

See also *Davidson Transfer & Storage Co. v. Christian,* 197 Md. 392, 79 A. 2d 541 (1951).

This being a transitory action appellant should have sued Mr. Mandel, Chairman of the Democratic State Central Committee, in Baltimore City, the place of his residence. It is beyond cavil that this action is transitory since there is no question involving real property or of an *in rem* nature which would justify its being characterized as a local action. See, *Superior Construction Co. v. Elmo,* 204 Md. 1, 102 A. 2d 739 (1954). *Cf., Dep't of Forests and Parks v. George's Creek Coal and Land Co.,* 249 Md. 600, 241 A. 2d 400.

## NECESSARY PARTY

The Democratic State Central Committee for Maryland was a necessary party to this suit. The style in which the action was titled designated "Marvin Mandel, Chairman of the Democratic State Central Committee for Maryland" as the sole defendant. Suing Mr. Mandel in his capacity as Chairman of the Democratic State Central Committee for Maryland is not the same as suing "the Democratic State Central Committee for Maryland," directly. An action which seeks through declaratory and equitable procedure to enjoin the governing body of a political party from performing the vital function of holding a state convention to select delegates to a national convention must be directed to the party state central committee itself. *See* Uniform Declaratory Judgments Act, Code 1957, Art. 31A, § 11 (1967 Repl. Vol.) ; *Reddick v. State,* 213 Md. 18, 29, 130 A. 2d 762 (1957).

It was of course unnecessary for the complainant to have named as parties defendant and served with process all of the members and officers of the Democratic State Central Committee for Maryland. It may well have been sufficient for the complainant to have followed the provisions of Code 1957, Art. 23, § 138 (1966 Repl. Vol.) for bringing suit against unincorporated associations.

In the lower court the case was heard on its merits and it was only after all the evidence was presented and argument of counsel concluded that the court on the motion of the appellant added the Democratic State Central Committee for Maryland as a party defendant. In our opinion this action was a nullity. The lower court in its opinion mentioned the fact that Thomas Hunter Lowe, Esq., appeared at the hearing as attorney for the Democratic State Central Committee for Maryland. It would appear that this characterization of Mr. Lowe's appearance is more of a gratuitous assumption than a fact to be gleaned from the record. He did join with Alfred L. Scanlan, Esq., in filing the answer for Marvin Mandel, Chairman of the Democratic State Central Committee, and there is a clerk's notation in the record made during the hearing that Mr. Lowe had filed his appearance as co-counsel for Mr. Mandel. How-

ever, there is nothing in the record to indicate that he appeared in this case representing the Democratic State Central Committee for Maryland.

Even if we were to assume, *arguendo,* that Mr. Lowe represented the Democratic State Central Committee for Maryland, it was not made a party until after the hearing had been concluded on April 2, at which time upon motion of the complainant, the lower court signed an order joining the Democratic State Central Committee for Maryland as a party. The record further reveals that on April 4 a certificate of service was filed by one of the attorneys representing the complainant attesting the mailing of suit papers to Thomas Hunter Lowe, Attorney at Law, Easton, Maryland, by registered mail on April 3. Thus, service of process, at the earliest, was not obtained on the Democratic State Central Committee until one day after the conclusion of the case on its merits. This would be assuming that Mr. Lowe represented the Democratic State Central Committee and as its attorney was authorized to accept service on its behalf. However, these assumptions are not substantiated by the record.

In the case of *N. C. R. R. Co. v. Rider,* 45 Md. 24 (1876), the sheriff stated in his return: "service submitted by counsel," and appended thereto was a memorandum signed by the defendant's attorney admitting service for his client. The Court held that: "A service on the attorney would not have the effect of bringing the corporation into the court so as to give the court jurisdiction over it," because the attorney was not an officer of the corporation. The court further stated:

> "But the admission, or memorandum signed by the attorney and returned with the writ, is not altogether nugatory. It must be construed as a waiver of service on the company, and a consent by the attorney, whose authority for that purpose will be presumed, * * *." *Id.* at 32.

The distinction between the case at bar and *Rider, supra,* is quite apparent, because in *Rider,* the defendant was already a named party to the action at the time the attorney waived personal service on the client and entered his appearance. In the

instant case the record does not reveal any action on the part of Mr. Lowe which could be considered a waiver of service of process on the Democratic State Central Committee after the committee was made a party defendant on motion of the appellant. See also the recent case of *Ellis v. Bailey,* 249 Md. 591, 241 A. 2d 124 wherein this Court in a per curiam opinion remanded a proceeding in which the chancellor, at the conclusion of the hearing on the merits, joined as parties defendant and issued process to property owners who had not appeared at the hearing.

We think that the bill of complaint should have been dismissed on the grounds of improper venue and want of a necessary party as set forth in the appellee's preliminary motion. Accordingly, by per curiam order filed April 30, 1968, we affirmed the action of the lower court in dismissing the bill of complaint, although for reasons different than those assigned by that court and without reaching the substantive issues raised by this appeal.